UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL AZZARA, | : | CIVIL ACTION NO. 4:CV-11-1075 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| WILLIAM A. SCISM, et al., | : | |
| Defendants | : | |

FILED SCRANTON
MAR 0 1 2012
Per_____ DEPUTY CLERK

## MEMORANDUM

THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

On June 3, 2011, Plaintiff, Paul Azzara ("Azzara"), an inmate confined in Allenwood Low Security Correctional Institution, ("LSCI-Allenwood"), White Deer, Pennsylvania initiated this Bivens[1] action pursuant to 28 U.S.C. § 1331. Azzara names as Defendants, William A. Scism, LSCI-Allenwood Warden; David J. Ebbert, Allenwood Medium Security Correctional Institution Warden; Kevin Bittenbender, Discipline Hearing Officer; Joyce Horikowa, Senior Litigation Counsel, Northeast Regional Office; J. Norwood, Regional Director; and Harley Lappin, Retired Director of Bureau of Prisons. (Doc. 1, complaint).

Plaintiff has been incarcerated since 2002, and his projected release date is 2015. (Doc. 1, complaint). On or about February 14, 2007, Plaintiff "allegedly drafted a letter which was never conveyed or communicated to any other person but allegedly contained a threat to another person." (Id. at 6). Plaintiff believes that "Defendants know, or should have known that Plaintiff possessed a First Amendment guarantee to draft personal writings, as such alleged personal writings enjoy the protection of the First Amendment and Title 17 U.S.C. §§ 101 et seq., until

---

[1] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

communicated to the alleged recipient; any third party, or until published." (Id.). Plaintiff alleges that "instead, Defendants initiated a criminal prosecution in an attempt to prosecute Plaintiff." (Id.). Plaintiff claims that Defendants have "unconstitutionally retaliated against [him] for the failed attempted criminal prosecution." (Id.).

Specifically, Plaintiff claims that on January 8, 2009, Defendant Bittenbender revoked his telephone and visitation privileges for two (2) years. (Id. at 7).

On April 28, 2009, Plaintiff claims that Defendant Ebbert "imposed an indefinite revocation on Plaintiff's email[2] usage in absence of Plaintiff abusing that, or any other means or channels of communication, arbitrarily and without any penological or governmental interest in doing so." (Id. at 8).

On July 30, 2009, Plaintiff states that Defendant Bittenbender "arbitrarily, and without any penological interest in doing so, revoked Plaintiff's visiting rights and telephone usage for an additional one and one-half years to run consecutive to the previously imposed two year revocation on those channels of communication, and revoked Plaintiff's email access for an additional two and one-half years to run consecutive to the previously imposed indefinite revocation." (Id.).

On July 17, 2010, Plaintiff claims that Defendant Bittenbender "arbitrarily, and without any penological interest in doing so, revoked Plaintiff's visiting rights and telephonic usage for an additional sixteen months to run consecutive to the previously imposed revocation on those

---

[2]The Trust Fund Limited Inmate Computer System (TRULINCS) is a BOP program designed to provide inmates with some limited computer access, to include the capability to send and receive electronic messages, without having access to the internet. See http://www.bop.gov/inmate_programs/trulincs_faq.jsp# 1.

channels of communication, and revoked Plaintiff's email access for an additional two and one-half years to run consecutive to the previously imposed indefinite revocation." (Id.).

Plaintiff makes no allegation, and there is no indication in the record, that Plaintiff's access to written correspondence has in any way been curtailed.

Plaintiff files the instant action claiming that Defendants have issued the above sanctions in retaliation for "Plaintiff exercising his constitutional guarantee to freedom of speech and expression." (Id. at 9). Additionally, Plaintiff claims that such sanctions violate his First Amendment right to freedom of speech and expression and his Fourteenth Amendment right to "intimate association" with his family members. (Id. at 10). Plaintiff further claims that "Defendants' conduct in denying Plaintiff his fundamental guarantee to intimately associate with his ill and elderly father is in violation of the Eighth Amendment ban on inhumane living conditions." (Id. at 11). Finally, Plaintiff states that since April 10, 2007, Defendants "did combine, conspire, and confederate together and with others, the identity of whom are unknown to plaintiff, to unconstitutionally retaliate against plaintiff for exercising plaintiff's First Amendment guarantees to Freedom of Speech and expression." (Id. at 7).

For relief, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. Id.

Presently pending before the Court is Defendants' motion to dismiss or, in the alternative, for summary judgment, (Doc. 20), Plaintiff's motion for preliminary injunction and temporary restraining order, (Doc. 3), and Plaintiff's motion for reconsideration of this Court's November 2, 2011 Order denying consolidation of the instant civil action with Plaintiff's pending habeas corpus action, (Doc. 37). The parties have fully briefed the issues and the motions are

now ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion to dismiss or, in the alternative, for summary judgment and deny the remaining motions.

I. **Standards of Review**

   A. **Bivens Standard**

Plaintiff's claims are filed pursuant to 28 U.S.C. § 1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Id. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir.1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); Young v. Keohane, 809 F. Supp. 1185, 1200 n.16 (M.D. Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992); Sharpe v. Costello, 2007 WL 1098964, *3 (M.D. Pa. 2007).

   B. **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. FED. R. CIV. P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt

5

as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. FED. R. CIV. P. 56(e).

C. **Motion to Dismiss**

The Court in Williams v. Hull, 2009 WL 1586832, *2-3 (W.D. Pa. 2009), set forth the Motion to Dismiss standard of review, as annunciated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007), and as refined in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), as follows:

> The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, ---U.S. ----, ----, 129 S.Ct. 1937, ----, 173 L.Ed.2d 868, ----, 2009 WL 1361536 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir.2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.1997). Nor must the court accept legal

conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."

Id. at 570. In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, *1 (D. Del. 2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

## II. Discussion

### A. Claims Based on Disciplinary Proceedings

The sanctions levied against Azzara were all imposed as a result of prison misconduct.[3] As such, the Court finds that any Fourteenth Amendment claim regarding his disciplinary hearing is barred under Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997).[4] Under some circumstances, a prisoner may bring a Bivens claim for monetary damages based on the denial of due process during a prison disciplinary hearing. See Wolff v. McDonnell,

---

[3] The Court takes judicial notice of Azzara v. Martinez, Civil No. 4:11-cv-1363. This action, filed pursuant to 28 U.S.C. § 2241, attacks the validity of the misconducts Azzara references in the instant action. Id. These misconducts all resulted in the disallowance of good conduct time as well as various forms of sanctions. Id.

[4] While Heck and Balisok involved § 1983 cases, courts have extended their holdings to Bivens actions. See Lora-Pena v. F.B.I., 529 F.3d 503, 506 n.2 (3d Cir. 2008) ("Although Heck involved a § 1983 action by a state prisoner, the reasoning in Heck has been applied to bar Bivens claims.") (citing Williams v. Hill, 74 F.3d 1339, 1341 (D.C. Cir. 1996) (per curiam)).

418 U.S. 539, 554 (1974) (stating that plaintiff's § 1983 "damages claim was ... properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct"). However, such due process claims cannot be brought in a Bivens action where the claims "necessarily imply the invalidity of the punishment imposed" unless the plaintiff shows that the sanctions have been overturned. See Balisok[5], 520 U.S. at 648 (finding claims for declaratory and monetary relief based on allegations that plaintiff was denied the opportunity to present a defense and that hearing officer was biased could not be brought pursuant to § 1983); Heck, 512 U.S. at 486-87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.").

Similarly, claims that disciplinary proceedings were filed in retaliation for a prisoner's exercise of his First Amendment rights are barred where the prisoner's success on such claims would "necessarily imply the invalidity of the deprivation of his good-time credits." See Balisok, 520 U.S. at 646, 648; cf. Muhammad v. Close, 540 U.S. 749, 754-55 (2004) (finding retaliation

---

[5]In Edwards v. Balisok, the Supreme Court applied the lessons of Heck to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits. Again, the Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment. 520 U.S. at 646-8.

claim not barred by Heck because challenged disciplinary proceeding did not affect duration of sentence). But see Woods v. Smith, 60 F.3d 1161, 1164-66 (5th Cir. 1995) (rejecting argument that prisoner could not bring § 1983 retaliation action "unless he first establishes that the underlying disciplinary proceedings were terminated in his favor")[6], cert. denied, Palermo v. Woods, 516 U.S. 1084 (1996).

Here, it is clear that Azzara is challenging the result of his prison disciplinary hearings, not simply the constitutionality of the procedures used during his disciplinary proceedings. Azzara seeks declaratory and injunctive relief, as well as money damages. However, a favorable outcome on the damages claim would necessarily imply the invalidity of the prison disciplinary finding and sanctions. Consequently, Azzara's § 1331 claim cannot proceed until such time as the disciplinary finding is invalidated through Plaintiff's pending habeas corpus action or some other appropriate means.

**B.     Bivens Claims**

**1.     First Amendment Freedom of Association Claim**

A right to intimate association with family members has been held to derive from both the First Amendment right of association and the substantive protections of the Fourteenth Amendment's Due Process Clause. See e.g., Roberts v. United States Jaycees, 468 U.S. 609, 617-20 (1984); Santosky v. Kramer, 455 U.S. 745, 753 (1982); Quilloin v. Walcott, 434 U.S. 246, 255 (1978); Moore v. City of East Cleveland, 431 U.S. 494 (1977). Many courts have recognized a liberty interest in familial relationships other than the parent-child relationship. See Trujillo v.

---

[6]The plaintiff in Woods challenged a disciplinary proceeding that did not affect the duration of his sentence. See Woods, 60 F.3d at 1163 (noting that after the disciplinary hearing, plaintiff "was sentenced to four weeks loss of canteen, ten days isolation, and a change in quarters").

9

Board of County Commissioners of the County of Santa Fe, 768 F.2d 1186, 1188-89 (10th Cir. 1985) (and cases cited therein).

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication). See also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates). Cf. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (concluding there is no substantive due process right to "unfettered visitation"); Neumeyer v. Beard, 301 F.Supp.2d 349, 351 (M.D. Pa. 2004), aff'd, 421 F.3d 210 (3d Cir. 2005) (finding that convicted prisoners and their families and spouses have no "absolute constitutional right to visitation" other than with legal counsel); Flanagan v. Shively, 783 F. Supp. 922, 934 (M.D. Pa. 1992) ("Inmates have no constitutional right to visitation. Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion"), aff'd, 980 F.2d 722 (3d Cir. 1992), cert. denied, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993).

Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls." Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978) (citation omitted). Moreover, free citizens possess a coextensive First Amendment right to reach out to those who are incarcerated. Thornburgh, 490 U.S. at 410 n.9; Rowe v. Shake, 196 F.3d 778, 783 (7th Cir.

1999). However, the institution may place limits on visitation if such limits are necessary to meet legitimate penological objectives, such as rehabilitation and the maintenance of security and order. See Overton v. Bazzetta, 539 U.S. 126 (2003) (withdrawing visitation privileges for a period of time to effect prison discipline "is not a dramatic departure from accepted standards for conditions of confinement"). When a prison regulation or practice impinges on inmates' or free citizens' speech and association rights, "the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The reasonableness standard is applied, using the four factors as set forth in Turner:

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.... Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one....
>
> A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates....
>
> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally....
>
> Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. This is not a "least restrictive alternative" test....

Turner, 482 U.S. at 89-90 (citations omitted).

Here, Plaintiff has not asserted any facts tending to show that the temporary restrictions on his visitation and telephone privileges are not related to legitimate penological interests, i.e., discipline for violation prison rules. Moreover, in light of his alternative means of communication, namely written correspondence, these temporary sanctions imposed as legitimate

11

sanctions in response to a disciplinary proceeding do not violate Plaintiff's First Amendment association rights. Consequently, Defendants are entitled to summary judgment as to this claim. Accord Henry v. Dep't of Corr., 131 Fed. Appx. 847, 848-49 (3d Cir. 2005) (holding that neither the due process clause nor Pennsylvania regulations guarantee inmates any protectable interest in prison visitation).

### 2. Eighth Amendment Claim

While the Eighth Amendment to the United States Constitution prohibits infliction of cruel and unusual punishments on those convicted of crimes, see Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981), this proscription can be violated only by an "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities ' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling, 509 U.S. at 32 (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)) (emphasis supplied). This component requires that the deprivation sustained by a prisoner be extremely serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992). In other words, an inmate may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care and personal safety. Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). Finally, the subjective component requires that the state actor have acted

with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson v. Seiter, 501 U.S. 294, 303 (1991). An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to the inmate." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

Plaintiff's allegations fail to satisfy even the objective element,[7] since loss of privileges, in general, does not amount to infliction of cruel and unusual punishment, and loss of visitation and telephone privileges is no exception to this rule. See Overton v. Bazzetta, 539 U.S. 126 (2003) (finding the withdrawal of visitation privileges for at least two years was not a dramatic departure from accepted standards for conditions of confinement, nor did such regulation create inhumane prison conditions, or deprived the inmate of basic necessities); Leon v. Schaaff, 2005 WL 2397241, *4 (D.N.J. 2005) (concluding lost commissary and telephone privileges and placement in disciplinary confinement for 120 days do not impose atypical and significant hardship upon an inmate); Troy v. Kuhlmann, 1999 WL 825622, * 12 (S.D.N.Y. 1999) (stating "denial of privileges such as telephone, package, and commissary privileges do not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on the inmate"); accord Sealey v. Giltner, 197 F.3d 578, 581 (2d Cir. 1999) (finding no violation of the Eighth Amendment where "[a]n inmate [was] confined to his cell 23 hours per day, [could] take no more than three showers per week, ha[d] limited library privileges and no

---

[7] Nor does Plaintiff set forth any allegations suggesting that prison officials sanctioned him with "deliberate indifference to a substantial risk of harm" to him.

telephone privileges."). Therefore, the Court finds that Petitioner's temporary loss of visitation and telephone privileges did not violate Petitioner's Eighth Amendment rights.

   3.   **Conspiracy**

To the extent that Plaintiff's complaint raises accusations of conspiracy, in order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). Plaintiff has concluded that Defendants have conspired to violate his rights yet he has failed to evidence any facts showing an agreement or plan formulated and executed by the Defendants to achieve this conspiracy. Plaintiff cannot rely on unsupported claims of conspiracy. Without a factual showing which gives some substance to the conspiracy claims, Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. See Young vs. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding that conspiracy claims which are based upon pro se plaintiff's subjective suspicions and unsupported speculation properly dismissed under § 1915(d)). Also, to survive a motion for summary judgment, Plaintiff must establish that there is a genuine issue of material fact regarding the question of whether the Defendants entered into an illegal conspiracy which caused Plaintiff to suffer a cognizable injury. Massachusetts School of Law at Andover v. American Bar Association, 107 F.3d 1026, 1039 (3d Cir.), cert. denied, 522 U.S. 907 (1997). In other words, to successfully counter Defendants' motions for summary judgment, Plaintiff must provide specific evidence establishing that Defendants agreed among themselves to act against him either unlawfully or for an unlawful

purpose. Vieux v. East Bay Regional Park Dist., 906 F.2d 1330, 1343 (9th Cir.), cert. denied, 498 U.S. 967 (1990).

Here, Plaintiff has failed to introduce into this record any evidence which shows an agreement or plan formulated and executed by Defendants or anyone else which rises to the level of a conspiracy. At a minimum, absent some modicum of proof which tends to reveal the existence of an agreement which is designed to deny the constitutional rights of the Plaintiff, he cannot maintain his conspiracy claim. In sum, Plaintiff's allegations, standing alone, are patently insufficient for a reasonable jury to return a verdict in his favor. Defendants' Motion for Summary Judgment will be granted.

### 4.  Respondeat Superior

Claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

An application of the above standards to Azzara's complaint clearly shows that he has failed to set forth a cognizable claim against Defendants Warden Scism, Warden Ebbert, Northeast Regional Director Norwood, and BOP Director Lappin. There is no evidence of record that these Defendants were personally involved in any of Plaintiff's alleged constitutional

violations. It is apparent that Plaintiff is attempting to impose liability on the basis of respondeat superior. Thus, Defendants Warden Scism, Warden Ebbert, Northeast Regional Director Norwood and BOP Director Lappin are entitled to judgment as a matter of law.

Moreover, to the extent that Azzara alleges these Defendants, as well as Defendant Joyce Horikowa, Senior Litigation Counsel, Northeast Regional Office, acted as a final decision-maker pursuant to authority granted to them by their agency, in the denial of Plaintiff's Administrative Remedies, it is well-established that prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Wilson v. Horn, 971 F.Supp. 943, 946 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998); McGuire v. Forr, 1996 WL 131130, *1 (E.D. Pa. 1996). While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts and such a right is not compromised by the failure of the prison to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (stating, federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to and resolution by that procedure); See also Pressley v. Beard, No. 3:CV-04-2535, slip op. at 4 (M.D. Pa., Sept. 26, 2005) (Kosik, J.). Because the Constitution does not create an entitlement to a grievance procedure or to access to any such procedure voluntarily established by a state, the failure to favorably address a grievance and/or the denial of a grievance appeal does not implicate a federal constitutional right. Jones v. Rohrer, Civil No. 1:CV-98-0520, slip. op. at p. 13 (M.D. Pa. March 2, 2000) (Munley, J.). Accordingly, these Defendants are entitled to summary judgment.

    C.    **Preliminary Injunction and Temporary Restraining Order**

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. See American Tel. and Tel. Co. V. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 US. 1103 (1995). Moreover, issuance of such relief is at the discretion of the trial judge. Orson, Inc. v. Miramax Film, Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:

(1) likelihood of success on the merits;
(2) irreparable harm resulting from a denial of relief;
(3) the harm to the non-moving party if relief is granted; and
(4) the public interest.

United States v. Bell, 2003 WL 102610, *2 (M.D. Pa. 2003) (Conner, J.) (internal citations omitted). It is the moving party that bears the burden of satisfying these factors. Id. The standards for a temporary restraining order are the same as those for a preliminary injunction. Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. See Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 356 (3d Cir. 1980). Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight, 882 F.2d at 801. A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." Id. The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued. Id. Speculative injury does not constitute a showing of irreparable harm. Continental, 614 F.2d at 359; see also Public Serv. Co. v. West Newbury, 835 F.2d 380, 383 (1st Cir. 1987). "The possibility that adequate compensatory or other corrective

relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Instant Air Freight, 882 F.2d at 801 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1964)). Of course, a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge. See Weaver v. Wilcox, 650 F. 2d 22, 27 n.13 (3d Cir. 1981) (concluding that the prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions, but not claims for damages.)

Based on Plaintiff's failure to prevail on the merits of the instant civil rights action, Plaintiff's motion for a preliminary injunction and temporary restraining order "commanding that defendants...cease from denying plaintiff his fundamental guarantee to intimately associate with his father and immediate family" (Doc. 3) will be denied.

A separate Order will be issued.

Dated: March 1, 2012

*[signature]*
**United States District Judge**